O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:99-CR-00257-CAS - 1 |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR MODIFICATION OF** |
| v. | ) | **TERM OF IMPRISONMENT** |
| | ) | **PURSUANT TO 18 U.S.C. § 3582(C)(1)** |
| ANTHONY S. GAINES, | ) | |
| | ) | |
| Defendant | ) | |

## I.    INTRODUCTION

On December 21, 1999, defendant Anthony S. Gaines was sentenced to 990 months of imprisonment following his conviction at trial for one count of Conspiracy to Interfere with Commerce by Robbery (18 U.S.C. § 1951), four counts of Interference with Commerce by Robbery (18 U.S.C. § 1951), and four counts of Using and Carrying a Firearm During a Crime of Violence (18 U.S.C. § 924(c)).  ECF No. 291; ECF No. 1. Specifically, a jury found that during a nine-month period of 1997 and 1998, Gaines planned and orchestrated a series of five armed robberies of K-Mart stores in the Los Angeles area—though Gaines was only charged in connection to four of the robberies. ECF No. 588 ("PSR") ¶¶ 20-51; 67-70.  Gaines recruited others to assist in the robberies, all of which involved use of firearms.  Id.  Gaines and his co-conspirators used guns to

-1-

threaten K-Mart employees.  See, e.g. PSR ¶ 49.  In total, they stole $189,998 from K-Mart.  Id. ¶ 52.

Gaines, appearing pro se, filed the present motion to reduce his term of imprisonment on April 22, 2020.  See ECF No. 638 ("Mot.").  The government filed an opposition on May 21, 2020.  See ECF No. 640 ("Opp.").  Gaines filed a reply on July 1, 2020.  See ECF No. 641 ("Reply").  Having considered the parties' submissions and arguments, the Court now finds and concludes as follows.

## II.     BACKGROUND

### A.     Gaines' Underlying Offenses And Conviction

The first robbery occurred on May 25, 1997, when co-defendant Patrick and an unindicted co-conspirator robbed a K-Mart on South Western Avenue, using guns to force employees to cooperate.  PSR ¶ 22.  Gaines and Patrick planned the robbery, and co-defendant Wade, who worked in the store, gave the robbers employee vests.  Id. ¶ 20.  The group took $42,167 in cash.  Id. ¶ 26.

For the second robbery, this time of a K-Mart in Torrance, Gaines again used an employee in his planning.  PSR ¶ 27.  On October 11, 1997, Wade and Patrick were lookouts, as unindicted co-conspirators used a gun to force employees to cooperate.  Id. ¶ 32.  The group took $30,673 in cash.  Id. ¶ 35.

On November 9, 1997, Gaines' group robbed another K-Mart also on South Western Avenue.  PSR ¶¶ 36-41.  Gaines used co-conspirators for security and transportation, Wade provided her home for planning, and Patrick provided a gun for the robbers.  Id. ¶ 37.  The robbers entered the store, threatened a co-conspirator who posed as a member of the public, and escaped with $26,111 in cash.  Id. ¶¶ 38-39, 41.

The fourth robbery occurred on December 24, 1997, when the group took $31,676 in cash and $1,125 in checks from a K-Mart on La Cienega Boulevard.  PSR ¶ 46.  Gaines planned the operation, Wade and Patrick served as lookouts, and two co-conspirators carried out the theft, using a threat to kill a group of employees who were at a nearby Little Caesar's on their lunch break to ensure cooperation.  Id. ¶¶ 42-45.

-2-

1       The final robbery took place on January 19, 1998 at a K-Mart on Sepulveda
2   Boulevard.  Gaines and Patrick planned the robbery, Wade and Patrick again served as
3   lookouts, and two other co-conspirators used guns and threats of violence to carry out the
4   operation.  PSR ¶¶ 47-51.  The group took $29,553 in cash.  Id. ¶ 51.

5       On August 19, 1999, a jury found Gaines guilty on all counts.  PSR ¶ 4.  Gaines was
6   sentenced to 990 months in prison, Patrick pleaded guilty and received 300 months in
7   prison, co-conspirator Blackstone was convicted by a jury and received a 290-month prison
8   sentence, co-conspirator Longsworth pleaded guilty and received a 77-month prison
9   sentence, co-conspirator Hoskins was convicted by a jury and received a 117-month prison
10  sentence, and co-conspirator Lezine pleaded guilty and received a 90-month prison
11  sentence.  ECF No. 433 at 2.  Wade was convicted on the same nine counts as Gaines, and
12  received a 877-month prison sentence.  ECF No. 294 at 3; ECF No. 619 at 14.

13      On April 13, 2020, the Court granted Wade's 18 U.S.C. § 3582(c)(1) motion, and
14  reduced her sentence to time served, with three years of supervised release.  United States
15  v. Wade, No. 99-CR-00257-CAS-3, 2020 WL 1864906, at *8 (C.D. Cal. Apr. 13, 2020).
16  Wade moved for a sentence reduction on the basis of changes in federal law from the First
17  Step Act, as well as substantial evidence of her exemplary rehabilitation while incarcerated.
18  See ECF No. 619.

19      The Court followed a number of other district courts in finding that "the 'drastic
20  reduction in § 924(c) sentences with its elimination of stacking … in combination with
21  other circumstances' may 'warrant[] a modification of the defendant's sentence.'"  Wade,
22  2020 WL 1864906, at *6 (quoting United States v. O'Bryan, No. 96-10076-03-JTM, 2020
23  WL 869475, at *2 (D. Kan. Feb 21, 2020)).  Because Wade presented substantial evidence
24  of her exemplary rehabilitation during her time in prison, and because she faced a sentence
25  that current policy would not justify, the Court found that she had "demonstrated
26  extraordinary and compelling reasons that could warrant a sentence reduction pursuant to
27  § 3582(c)(1)."  Wade, 2020 WL 1864906, at *6.

28

-3-

**B.**    **Congress Amends 18 U.S.C. § 924(c)**

At the time of Gaines' sentencing hearing, conviction on a charge pursuant to § 924(c) imposed a mandatory-minimum 60-month sentence for conviction of a first § 924(c) offense, and additional mandatory-minimum 240-month sentences for conviction on each additional § 924(c) offense.  These sentences were also required to be served consecutively, meaning that they could be "stacked" to automatically impose significant terms of imprisonment not necessarily commensurate with the underlying offense.  See U.S. Sentencing Comm., Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (2011) (explaining that the former application of § 924(c) could "lead to sentences that are excessively severe and disproportionate to the offense committed").

Section 403 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), eliminated both the higher penalty for second and subsequent § 924(c) offenses, and the stacking feature that required a defendant to serve those heightened sentences consecutively, in cases where a defendant did not have a previous final conviction for a § 924(c) charge at the time of the new § 924(c) offense or offenses.  As a result, defendants with no prior § 924(c) convictions today face a mandatory-minimum sentence of 60 months on each § 924(c) count for which they are convicted.  Although Congress did not give this amendment retroactive effect, it is undisputed that, had Gaines been convicted today for the same offenses for which he was convicted in 1999 and sentenced to the same mandatory-minimum prison term for the § 924(c) counts, he would only have been required to serve a total of 240 months of imprisonment for the four § 924(c) violations—not the 780 months to which he was sentenced on those counts in 1999.  See Opp. at 8 n. 6 (the government acknowledges that "[i]f Petitioner was sentenced today, he could not face a sentence of life imprisonment").

## III.    LEGAL STANDARD

The FSA amended the United States Code to promote the rehabilitation of prisoners and "unwind decades of mass incarceration."  See United States v. Rodriguez, 424 F. Supp.

3d 674, 680 (N.D. Cal. 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).

Among other things, the FSA amended the procedures by which defendants can seek sentence reductions through modification.  Previously, a defendant could only petition the Director of the Bureau of Prisons ("BOP") for a modified sentence, who could then move the district court at his or her discretion for relief.  See U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G.").  "The BOP Director rarely did so."  Rodriguez, 424 F. Supp. 3d at 680 (citing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

Correcting this flaw, the FSA now allows defendants to petition district courts directly for sentence modifications.  See 18 U.S.C. § 3582(c)(1)(A)(i).  The statute sets forth three requirements: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant [a sentence reduction] only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.'  Third, the district court must also consider 'the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'"  Rodriguez, 424 F. Supp. 3d at 680 (quoting 18 U.S.C. § 3582(c)(1)(A)) (internal citations omitted).  Even where these requirements are otherwise met, a court must deny a motion for compassionate release if it determines that releasing a defendant would pose a "danger to the community."  See United States v. Eberhart, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction in sentence under § 3582(c)(1)(A) requires a determination that 'the defendant is not a danger to the safety of any other person or to the community[.]'") (citation omitted).

## IV.   DISCUSSION

Gaines contends that the amendments to § 924(c) essentially by themselves establish extraordinary and compelling reasons that entitle him to compassionate release.  The

-5-

government opposes that contention.[1]   For the reasons explained below, while the amendments to § 924(c) *may*—in conjunction with other factors—provide extraordinary and compelling reasons that warrant compassionate release, Gaines has not presented sufficient evidence of any other factors that would allow the Court to conclude, at this time, that there are extraordinary and compelling reasons to justify his release.

Although the FSA does not define "what constitutes 'extraordinary and compelling'" reasons that justify compassionate release, Rodriguez, 424 F. Supp. 3d at 681, this Court follows the district courts which have concluded that a court "assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it" and may "consider the vast variety of circumstances that may constitute 'extraordinary and compelling[.]'" Wade, 2020 WL 1864906, at *5 (quotations omitted) (citing cases); see also United States v. Singui, No. 12-CR-00851-CAS, 2020 WL 2523114, at *3-4 (C.D. Cal. May 18, 2020) (same).

The FSA's amendments to the § 924(c) enhancement may, in conjunction with other factors such as age, medical need, and evidence of exemplary rehabilitation, provide extraordinary and compelling reasons that justify compassionate release.  See, e.g. Wade, 2020 WL 1864906, at *5-6 (discussed supra); United States v. Chan, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020) (FSA amendments plus evidence of rehabilitation is extraordinary and compelling); United States v. Hope, No. 90-CR-06108-KMW-2, 2020 WL 2477523, at *4 (S.D. Fla. Apr. 10, 2020) (FSA sentencing amendments, petitioner's serious medical condition and related need for surgery, and petitioner's evidence of rehabilitation constitute extraordinary and compelling reason); United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020) (finding that the 924(c) amendments, combined with the petitioner's age and

---

[1] The government concedes that Gaines exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A), when the warden at his correctional institution denied his compassionate release petition on February 21, 2020.  See ECF No. 638-2.

evidence of rehabilitation, constituted a sufficient reason to modify the petitioner's sentence); United States v. Maumau, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020) (finding adequate reason from the 924(c) amendments in combination with the petitioner's age).

Although Gaines is correct that the § 924(c) amendments are significant, he has not provided sufficient evidence to establish some necessary additional factor that would allow this court to conclude that extraordinary and compelling reasons justify compassionate release. In his Reply, Gaines mentions that he "has rehabilitated, has placed himself on a positive life trajectory" and "has taken and continues to take numerous self improvement and education programs and courses." Reply at 5. Gaines supports these assertions with certificates from programs and classes he has completed, ECF. No. 638-3, and with BOP records listing his accomplishments while in custody. ECF No. 641-1. In Wade's case, the Court found rehabilitation to be an additional factor to find an extraordinary and compelling reason—but did so based on a much more robust evidentiary record. Cf. Wade, 2020 WL 1864906, at *2 (relying not just upon an extensive list of Wade's coursework, certifications of accomplishments, and service work, but also affidavits from her prison work supervisor, relatives involved in her rehabilitation and re-entry plan, and a detailed statement from Wade herself).

Other courts have relied on statements about "positive influence on [petitioner's] fellow inmates" and commendations, Hope, 2020 WL 2477523, at *4, "letters from individuals with no obvious stake in the outcome of these proceedings, attesting to the good [petitioner] has done for others during his imprisonment," United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *8 (W.D.N.Y. Apr. 20, 2020), "work performance evaluations" and a demonstrated "commitment to self-improvement, devoting hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibiting solid work habits, caring for mental health inmates, and in the process exceeding his supervisor's expectations across most, if not all, areas of work," United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *10 (E.D. Va. Mar. 16, 2020), and more comprehensive

BOP progress reports. <u>United States v. Brown</u>, No. 4:05-CR-00227-1, 2020 WL 2091802, at *7 (S.D. Iowa Apr. 29, 2020) (report states "[h]e has exhibited an exemplary rehabilitative record as a testament to his positive character and efforts" and "[h]e should be employable upon release"). On the other hand, at least one other district court has declined to find evidence of rehabilitation sufficient to support compassionate release in conjunction with changes to § 924(c) when that evidence consisted solely of records of completing various programs and classes, without more. <u>Avery</u>, 2020 WL 3167579, at *7 ("Avery's request rests primarily on rehabilitation and the non-retroactive change in the mandatory 'stacking' regime. On this record, that is insufficient.").

Accordingly, the Court finds that while Gaines has demonstrated that he could be entitled to a sentence reduction based in part on the FSA's amendments to § 924(c), he has not presented evidence sufficient to establish a requisite second factor at this time—such as exemplary rehabilitation—and has therefore not shown that extraordinary and compelling reasons support his motion.

## V.    CONCLUSION

Because Gaines has not presented sufficient evidence to support the Court's necessary finding of a factor supporting the existence of extraordinary and compelling reasons in addition to the amendments to § 924(c), the Court cannot grant his motion, at least at this time. For the foregoing reasons, Gaines' motion is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED: July 20, 2020

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

-8-